## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAROLYN GALLOWAY, *et al.*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>CHUGACH GOVERNMENT SERVICES, INC.,<br><br>    *Defendant*. | Civil Action No. 15-979 (RDM) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Conditional Approval of a Collective Action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). *See* Dkt. 17. Although Plaintiffs' factual proffer tests the limits of what is minimally necessary to justify conditional approval, the Court nonetheless concludes that they have made the requisite "modest factual showing." That said, the Court will limit the collective action to persons bringing claims that have accrued within the three years preceding the date the person joins the suit. *See* 29 U.S.C. §§ 255(a), 256(b). The Court, accordingly, will **GRANT** in part and **DENY** in part the motion to conditionally approve this collective action. The Court will further order that the parties confer regarding the appropriate form of the notice to be sent to the prospective opt-in plaintiffs.

## I.  BACKGROUND

Plaintiffs Carolyn Galloway, Desiree McKeiver, and Carlette Ososanya were all employees of Defendant Chugach Government Services, Inc. ("Chugach"), where they worked as "Residential Advisors." Am. Compl. ¶¶ 5–7; *accord* Dkt. 18 at 3 n.1. Residential Advisors

"oversee[] and assist[] the residents in the Potomoc Job Corps dormitories."  Am. Compl. ¶ 9.
Plaintiffs estimate that "approximately 20 individuals" work in identical or similar positions, *id.*
¶ 8, and that "35 [to] 40 people" may have held that job title since June 2012, *see* Status
Conference Transcript (Sept. 13, 2016) (statement of Plaintiffs' counsel).

Chugach allegedly failed to pay Residential Advisors overtime wages.  Three alleged
"polic[ies] and practice[s]" are to blame.  Am. Compl. ¶ 34.  First, Chugach allegedly required
Residential Advisors to work through meal breaks (often three to five times per week) but
deducted one hour's pay per shift regardless of whether the employee actually received a break.
*Id.* ¶¶ 11–16.  Second, as often as four to five days each week, Chugach allegedly required
Residential Advisors to work 20–30 minutes beyond their scheduled shifts without pay while
they waited for their replacement.  *Id.* ¶¶ 17–21.  And, third, Chugach allegedly required
Residential Advisors "regularly" to work more than five eight-hour shifts per week (not
including the deducted hour for meal breaks) without paying overtime wages.  *Id.* ¶¶ 10, 22–29.

Ososanya attests to these practices.  *See* Dkt. 17-2 (Ososanya Aff.).  She declares that,
between approximately June 2012 and April 2015, Chugach "regularly required [her] to work
through [her] meal breaks" and "to remain at [her] work location at the end of [her] shift until
[her] replacement arrived," but failed to compensate her for that time.  *Id.* ¶¶ 2, 4–5; *accord* Am.
Compl. ¶ 7.  She further declares that she "regularly worked in excess of 40 hours per week"
without receiving overtime pay.  Ososanya Aff. ¶ 3.  And, most significantly for present
purposes, she declares that she "know[s] many Resident[ial] Advisors" whom Chugach also
"required to work through their meal breaks and [to] remain at their work locations until their
replacement[s] arrived," and whom Chugach also failed to pay overtime wages.  *Id.* ¶ 6.

Asserting claims under the FLSA and the D.C. Minimum Wage Act ("DCMWA"),[1] Galloway brought this suit against Chugach on June 23, 2015. Dkt. 1. Two months later, she amended the complaint to add McKeiver and Ososanya as plaintiffs. Dkt. 7. The Court thereafter denied Chugach's motion to dismiss the amended complaint for failure to state a claim. *Galloway v. Chugach Gov't Servs., Inc.*, 199 F. Supp. 3d 145, 153 (D.D.C. 2016). Plaintiffs have now moved for conditional certification of a "collective action." Dkt. 17. Pursuant to the parties' stipulation, no discovery has occurred. Dkt. 16.

## II.  LEGAL STANDARD

The FLSA permits employees denied overtime pay to sue "[o]n behalf of . . . other employees similarly situated." 29 U.S.C. § 216(b). Such suits, termed "collective actions," differ fundamentally from class actions under Federal Rule of Civil Procedure 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). Whereas Rule 23 judgments often bind all absent class members, *see* Fed. R. Civ. P. 23(c)(3), the only persons bound by a collective action are those who file "consent in writing to become . . . a party," § 216(b). Rule 23's procedural safeguards—including the numerosity, commonality, and typicality requirements—are therefore inapposite. *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 169 (D.D.C. 2014); *see Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1136 (D. Nev. 1999) ("The § 216(b) requirement that plaintiffs consent to the suit serves essentially the same due

---

[1]  Plaintiffs assert claims under the DCMWA, *see* Am. Compl. ¶¶ 52–56, but they have not sought to certify a DCMWA collective action, *see* Dkt. 17, and, in any event, it is unclear that such a motion would prevail. Although the collective action provisions of the FLSA and the DCMWA once paralleled one another, recent amendments to the DCMWA have modified the portion of the statute authorizing collective actions. *See Eley v. Stadium Grp., LLC*, 14-cv-1594, 2015 WL 5611331, at *4–5 (D.D.C. Sept. 22, 2015). "[I]f Plaintiffs wish to pursue their DCMWA claims collectively, they will need to submit supplemental briefing that addresses the impact of the new DCMWA language on those claims." *Id.* at *5.

process concerns that certification serves in a Rule 23 action."). Instead, the only prerequisite to a collective action is the one enumerated in the statute: that each employee who opts in be "similarly situated." *Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 92 (D.D.C. 2013).

District courts enjoy "considerable discretion" to decide whether and how collective actions should proceed and to fashion procedures for "joining similarly situated employees in a manner that is both orderly and sensible." *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). That discretion permits courts, "in appropriate cases," to "facilitat[e] notice to potential plaintiffs." *Hoffman-La Roche Inc.*, 493 U.S. at 169–71. Neither the Supreme Court nor the D.C. Circuit have defined "similarly situated" or prescribed any specific collective action procedures, but "[c]ourts in this Circuit and others have settled on a two-stage inquiry." *Dinkel*, 880 F. Supp. 2d at 52 (collecting cases) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).

The first stage consists of the Court's determination whether to facilitate notice to potential opt-in plaintiffs, who might otherwise go unaware of the pending action. *Dinkel*, 880 F. Supp. 2d at 52. Plaintiffs typically propose a "class" of persons to be notified, comprising employees who "*may* be 'similarly situated' to the named plaintiffs" and who therefore *may* be eligible to opt in. *Ayala*, 12 F. Supp. 3d at 170. Certainty is not the standard; courts require only a "modest factual showing" that the "named and potential plaintiffs together were victims of a common policy or plan that [allegedly] violated the law." *Id.* (alteration and internal quotation marks omitted). Once the Court is satisfied that "'similarly situated' plaintiffs do in fact exist," *Dinkel*, 880 F. Supp. 2d at 52, the Court may "conditionally certify" the lawsuit as a collective action. In practical terms, this means that the Court "may facilitate notice of the collective action to [the] potential plaintiffs," *Blount*, 945 F. Supp. 2d at 92, and that "[t]he action proceeds

throughout discovery as a representative action for those [plaintiffs] who opt-in," *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008).  Importantly, although "conditional class certification" is a convenient shorthand for this procedure, the FLSA "does not actually 'create a class of plaintiffs,'" *Myers*, 624 F.3d at 555 n.10 (quoting *Morgan*, 551 F.3d at 1259).  The eligibility of each employee who "opts in" must still be assessed at the second stage.

The second, more demanding stage takes place after discovery, "at which time the defendant may move to decertify the class based on the evidentiary record developed during the discovery period." *Blount*, 945 F. Supp. 2d at 93.  The Court, armed with a more complete factual record, then resolves the ultimate question required by the statute: "whether each plaintiff who has opted in . . . is in fact similarly situated to the named plaintiffs." *Dinkel*, 880 F. Supp. 2d at 53 (citation omitted).  This determination is flexible, ad hoc, and "soundly within the discretion of the district court." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *see also, e.g.*, *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584–85 (6th Cir. 2009); *Morgan*, 551 F.3d at 1261–62.  "Relevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 536–37.  "Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Id.* at 537.  The answer depends "not . . . on any single factor in isolation, but on a variety of factors."  7B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1807 (3d ed. updated Apr. 2017).

# III.  ANALYSIS

This case is at the first stage of the certification process.  Plaintiffs propose to notify "[a]ll persons . . . employed by Chugach . . . [as] 'Residential Advisor[s]' at any time since June 23, 2012, who[m] [Chugach] failed to pay overtime compensation for all hours worked in excess of 40 . . . in [a] given pay period[]."  Dkt. 19-1 at 1.  They ask that the Court (1) "conditionally certify" this action as a collective action; (2) order that Chugach provide the names, addresses, and email addresses of each employee to be notified; and (3) approve the form of the notice that Plaintiffs propose to send.  Dkt. 17-1 at 8.  Chugach opposes each request.   Dkt. 18.

## A.    Conditional Certification

Whether to conditionally certify this action and facilitate notice to the proposed class of employees depends on whether Plaintiffs have made the requisite "modest factual showing" that potentially similarly situated plaintiffs do, in fact, exist.  "The bar for a plaintiff at the first stage of the process is not high."  *Ayala*, 12 F. Supp. 3d at 170 (collecting cases describing the standard of proof as "low," "lenient," "flexible," and "not heavy").  "[A]ll that is needed is *some* evidence, *beyond pure speculation*, of a factual nexus between the manner in which the employer's alleged policy affected a plaintiff and the manner in which it affected other employees."  *Id.* (emphases added) (citation, quotation marks, and alteration omitted).

Here, Plaintiffs' factual proffer skirts close to the line of what is minimally sufficient.  Of the three named Plaintiffs, only one has submitted a declaration, and that declaration speaks in only in general terms.  Plaintiff Ososanya declares that she "know[s] many Resident[ial] Advisors" who worked for Chugach during the relevant time period and that she "know[s] that those Resident[ial] Advisors . . . were required to work through their meal breaks and remain at their work locations until their replacement[s] arrived and were not [always] paid compensation for hours worked in excess of 40 in a[] given week."  Dkt. 17-2 at 1–2 (Ososanya Aff. ¶ 6).

Compared to the volume of factual evidence put forth in other cases, this is a slender reed. *See, e.g.*, *Ayala*, 12 F. Supp. 3d at 171 (considering "several declarations in conjunction with" the motion to conditionally certify); *Blount*, 945 F. Supp. 2d at 93 (considering at least six declarations).

Fortunately for Plaintiffs, "minimally sufficient" is still sufficient. The declaration they submitted may be short on detail, but it is based on personal knowledge, and it thus meets the low bar of evidence "beyond pure speculation." *Ayala*, 12 F. Supp. 3d at 170. The declaration tends to show (1) that Chugach employed other "Residential Advisors" at the Potomac Job Corps dormitories (where Ososanya apparently worked); (2) that those Residential Advisors arguably had similar job responsibilities, by virtue of them having the same title; and (3) that Chugach failed to pay overtime compensation to at least some of those Residential Advisors in roughly the same manner that it allegedly failed to pay Plaintiffs. *See* Dkt. 17-2 at 1–2 (Ososanya Aff. ¶ 6). Courts have permitted collective actions to move forward based on factual showings that were similarly general. *See, e.g.*, *Ayala*, 12 F. Supp. 3d at 170–71 (conditionally certifying collective action where the evidence showed that the proposed class to be noticed "performed a *variety* of construction, carpentry, and odd jobs," and did so at a *variety* of job sites (emphasis added)); *Castillo v. P & R Enters., Inc.*, 517 F. Supp. 2d 440, 446 (D.D.C. 2007) (conditionally certifying collective action based on general evidence that putative plaintiffs "have similar job responsibilities" and "were not compensated with overtime pay"). The Court is therefore satisfied—albeit barely—that there is a reasonable possibility that at least some "similarly situated" employees exist.

Chugach raises several opposing arguments that merit discussion.

*First*, Chugach faults Plaintiffs for not submitting declarations from potential opt-in plaintiffs. *See* Dkt. 18 at 6. Although it is true that "[a]ffidavits from potential class members affirming their intention to join the suit are *ideal* for an analysis" of whether potential opt-in plaintiffs exist, *Simmons v. T-Mobile USA, Inc.*, No. 06-cv-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) (emphasis added), the Court is aware of no authority suggesting that such affidavits are required. Nor should they be. If, after receiving notice of the suit, no other employees elect to join, so much the better for Chugach. The Court is unpersuaded that the effort involved in propagating a list of about twenty-to-thirty individuals who held similar jobs during the applicable limitations period is so significant as to warrant foreclosing this collective action at the outset.

*Second*, Chugach takes issue with the generality of Ososanya's declaration, which the Court has already discussed. Specifically, Chugach argues that Ososanya's statement is "conclusory" and thus "devoid of any content, meaning, or value." Dkt. 18 at 6. Again, Ososanya's declaration is undoubtedly general, but it is not entirely conclusory; it attests that Ososanya has personal knowledge that other Residential Advisors were required to work through meal breaks and beyond their scheduled shifts without receiving overtime wages. And, although Chugach is correct that Ososanya's personal knowledge of her coworkers cannot demonstrate the existence of similarly situated employees in *other* Chugach facilities, *see Dinkel*, 880 F. Supp. 2d at 56, it appears that Plaintiffs' proposed class is limited to Residential Advisors at the Potomac Job Corps dormitories, where Ososanya works, *see* Am. Compl. ¶¶ 8–9. Because Plaintiffs' filings are admittedly ambiguous on this point, the Court will now confirm: The Court will conditionally approve this collective action only with respect to opt-in plaintiffs employed as Residential Advisors at the Potomac Job Corps dormitories.

*Third*, Chugach argues that "Plaintiffs have failed to [adduce] any factual evidence" that "policies or procedures exist[] requiring employees to work through their meal breaks or stay beyond the end of their shift." Dkt. 18 at 7–9 (italics omitted). According to Chugach, "Plaintiffs cannot point to any page in [Chugach's] timekeeping procedures []or any overarching policy that states employees are prohibited from recording overtime hours or hours worked during meal breaks or post-shift work." *Id.* at 8. The existence of such a written policy would strengthen Plaintiffs' case. But "Plaintiffs need not show that the challenged policy is in writing." *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 827 (E.D. Mich. 2009) (collecting cases). Moreover, at least for purposes of conditional certification, the Court is not swayed by Chugach's own evidence that it maintains a policy of requiring employees to record the time they worked. *See* Dkt. 18 at 8. To date, Plaintiffs have had no opportunity to adduce their own evidence through discovery. "At this stage [of the proceeding], district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits." *Dinkel*, 880 F. Supp. 2d at 53; *accord Ayala*, 12 F. Supp. 3d at 171.

*Fourth*, Chugach argues that the putative plaintiffs' claims "are extremely individual and fact-specific . . . due to the numerous individual differences in their positions, pay rates, time periods worked, shift schedules, and supervisors." Dkt. 18 at 9–10. Some of these purported differences may be relevant at the second stage if Chugach moves to decertify the collective action. But the Court cannot and need not conclude on the present record that individualized issues necessarily so permeate the claims as to render collective action inappropriate. That determination must await discovery into the specific nature of Chugach's alleged policies and whether they were dependent on the exercise of various managers' individual discretions. If and

when that day comes, the Court will require further briefing as to whether such discretion is fatal to Plaintiffs' "similarly situated" status.

*Fifth*, and most importantly, Chugach objects to notifying all employees who have worked at Residential Advisors since June 23, 2012, on the ground that not all those employees will necessarily have claims falling within the three-year statute of limitations.[2]  *See* Dkt. 18 at 14–15; 29 U.S.C. § 255(a).  According to Chugach, "the statute of limitations is continuing to run for plaintiffs that have not yet opted in to the lawsuit; . . . no one other than the Plaintiff Galloway will be entitled to relate the cause of action back as far as June 23, 2012."  Dkt. 18 at 15.  For this reason, Chugach requests that "[a]ny date provided in the notice . . . comport with the statute of limitations that will apply to each potential plaintiff, and in any case should not be earlier than three years prior to the date of the notice."  *Id.*  Plaintiffs fail to respond to this argument in their reply brief.  *See generally* Dkt. 19.

Chugach is correct on the law.  The FLSA expressly states that a collective action "shall be considered to be commenced in the case of any individual plaintiff" on the date on which that plaintiff files written consent with the Court to join the collective action.  29 U.S.C. § 256(b).  Although this statute of limitations may in principle be subject to equitable avoidance doctrines, Plaintiffs have not argued that any such doctrines apply here, or, indeed, addressed Chugach's argument at all.  As a result, the Court will adopt Chugach's unopposed request and conditionally certify this collective action only as to Residential Advisors who worked at the

---

[2]  The FLSA provides for a three-year statute of limitations for "willful violations," and a two-year statute of limitations otherwise.  *See* 29 U.S.C. § 255(a).  Pending a post-discovery determination as to whether the alleged FLSA violation here was "willful," the parties should assume a three-year statute of limitations to avoid prejudicing any potential plaintiffs.  *See Galloway*, 199 F. Supp. 3d at 151–53.

Potomac Job Corps dormitories at any time in the three years preceding the date on which they file written consent to join the collective action.

None of the foregoing discussion is to say that everyone in Plaintiffs' proposed class of employees to be notified is necessarily "similarly situated" or that Plaintiffs are necessarily entitled to go to trial in a collective action.  But, given the low bar Plaintiffs face at this early stage of the proceeding, and given the relatively small and manageable size of their proposed collective action, the Court will **GRANT** in part and **DENY** in part their motion for conditional certification.  The motion is in most respects granted, subject to the caveats that (1) the proposed class of persons to be notified include only employees who work or worked at the Potomac Job Corps dormitories; that (2) the notice need be sent only to those employed as Residential Advisors since July 12, 2014; and that (3) the notice specify that the collective action will include only those employed as Residential Advisors within three years of the date the prospective member of the collective action files a written consent to join the action.

**B.      Facilitation of Notice**

In light of the decision to conditionally certify the collective action, the Court will also take appropriate steps to facilitate notice to the potential plaintiffs.  This facilitation has two components: (1) ordering Chugach to provide the potential plaintiffs' contact information and (2) approving of the notice that Plaintiffs' counsel will send them.

As to the first point, Plaintiffs ask that Chugach turn over the "names, addresses[,] and email addresses" of the employees to be noticed.  Dkt. 17-1 at 8.  Chugach objects to the furnishing of email addresses on the grounds that email addresses constitute "inherently private information."  Dkt. 18 at 13 n.3 (quoting *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 198 (N.D.N.Y. 2009)).  In the present context, the Court agrees.  To minimize any undue imposition on the potential plaintiffs, the Court will limit the production to their names and

residential addresses.  "[I]f [P]laintiffs are unable to reach one or more potential plaintiffs based on the information that is produced, they may move for a further order requiring defendants to produce additional information about those individuals."  *Blount*, 945 F. Supp. 2d at 97.

As to the form of the notice, Chugach objects that Plaintiffs' proposed notice uses unduly "loaded" language, misstates the law in certain respects, and "is replete with inaccuracies and typos."  Dkt. 18 at 14–15.  Chugach also requests that it have input into what the notice says, and observes that, in other cases, "the form of the notice has been the subject of joint negotiation." *Id.* at 15.  Without expressing its views on the merits of Chugach's objections,[3] the Court agrees that these are issues that the parties should resolve in the first instance.  The Court will therefore direct that the parties confer and jointly propose a notice to potential opt-in plaintiffs—consistent with this opinion—which the parties shall submit within the next fourteen days.

## ORDER

In light of the above, it is hereby

**ORDERED** that Plaintiffs' motion for conditional approval of collective action, Dkt. 17, is **GRANTED** in part and **DENIED** in part.  This action is conditionally certified as a collective action comprised of employees who have worked for Chugach as Residential Advisors at the Potomac Job Corps dormitories at any point during the three years preceding the date of the filing with the Court of their written notice of consent to become a party, and who claim not to have been paid overtime wages by Chugach at some point during that period.  It is

**FURTHER ORDERED** that Chugach shall provide to Plaintiffs' counsel a list of all employees who have worked for Chugach as Residential Advisors at the Potomac Job Corps

---

[3]  It is worth noting at least one error in Plaintiffs' proposed notice, however.  The proposed notice is labeled a "Notice of Certification of Collective Action."  Dkt. 19-1 at 1.  But no such certification has occurred.  In this order, the Court *conditionally* certifies a collective action.

dormitories since July 12, 2014, as well as those employees' residential addresses.  Chugach shall provide the list to Plaintiffs' counsel on or before July 12, 2017.  It is

**FURTHER ORDERED** that Plaintiffs' counsel and Defendant's counsel shall confer and jointly propose a notice to be mailed to the above-described employees.  The proposal shall be consistent with the Court's directions in this opinion.  The parties shall submit their joint proposal to the Court on or before July 12, 2017.  In the event the parties are unable to agree upon a proposed notice, the parties shall instead file a joint status report setting forth their respective positions on July 12, 2017, and shall appear for a status conference on July 13, 2017, at 11:00 a.m.

**SO ORDERED**.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  June 28, 2017